Iver W. SWANSON et ux., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Iver W. SWANSON, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. Nos. 9686, 9687.

United States District Court, E. D. California.

Sept. 2, 1970.

Robert E. Tout, Wilson B. Copes, Stockton, Cal., for plaintiffs.

John M. Youngquist, Martin A. Schainbaum, Sp. Asst. U. S. Attys., San Francisco, Cal., for defendant.

## MEMORANDUM AND ORDER

WILKINS, District Judge.

These two consolidated cases arise as as a result of the disallowance of plaintiffs' claim for the refund of Federal income taxes. Civil Action No. 9686 concerns the assessment of taxes on certain liquidating distributions from a corporation wholly owned by plaintiff Iver Swanson. The Government's position is that the distributions were dividends taxable as ordinary income. Plaintiffs' position is that the distribution should be treated as long term capital gains under the provisions of Section 331 of the Internal Revenue Code of 1954. Civil Action No. 9687 concerns the liability of Iver Swanson as transferee of the assets of the above-mentioned corporation. Plaintiffs' contention is that as these assets were distributed under a plan of complete liquidation, they are absolved from tax liability under the provisions of Section 337 of the Code.

In brief compass, the facts of these cases are as follows: A corporation, Stockton Construction Co., Inc. (hereafter called "Old Stockton") distributed its assets to plaintiffs and was wound up and liquidated pursuant to California law. The liquidation was performed for tax purposes following the advice of plaintiffs' tax lawyer. The purpose was for plaintiffs to minimize their taxes by availing themselves of the taxation at capital gains rates rather than at ordinary income tax rates, pursuant to Section 337 of the Internal Revenue Code of 1954.

This Court finds that there was a complete liquidation pursuant to Section 337 of the Internal Revenue Code of 1954. I also find that the transaction was not a D, E, or F reorganization according to Sec. 368(a) (1) of the Code.

1. *There was a Bona Fide and Complete Liquidation of Old Stockton.*

Iver Swanson conducted an underground pipe construction and manufacturing business primarily through Old Stockton. This corporation did not own its operating equipment. The equipment belonged to Mr. Swanson as sole proprietor, doing business as Stockton Construction Co. The principal assets of the corporation were the goodwill, the employees' skills, and its bonding capacity. Acting on the advice of his tax counsel, Swanson liquidated Old Stockton and distributed the assets of the corporation. For a time he operated as a sole proprietor, but ultimately decided that this mode of doing business was unsatisfactory, primarily because it required him to risk all his personal assets in his new ventures. Therefore he decided to set up a new corporation, also named Stockton Construction Co., Inc. (hereafter, New Stockton).

The Government contends that this was a sham liquidation and not entitled to the favorable tax treatment granted a genuine liquidation. It employs a variety of related arguments, which are discussed in order.

The first Government reference is to Bittker and Eustace, Federal Income Taxation of Corporations and Stockholders, Section 12.22. Brief for the United States at 21–22. This Court does not disagree with or dissent from the authors' position. Quite the contrary. Relying on the very passage the Government emphasized, we paraphrase the authors to the effect that the result should depend on how the liquidation-reincorporation transaction is viewed: If it is as "successive steps in a single plan," there is no genuine liquidation. On the other hand, if the liquidation and the transfer of assets to the new corporation are each treated as "an independent transaction," there is then a genuine liquidation. This Court takes the view that the evidence proves the liquidation and the later incorporation were "independent transactions." The first transaction, the liqui-

dation, was for the purpose of tax avoidance. However, this does not make it any less a bona fide liquidation. The second transaction—the incorporation of New Stockton—came later and was for business reasons as stated above. What we have, then, are two separate transactions, not a single unified transaction.

As for the general arguments concerning form versus substance, wherein the Government rests on the notions of Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1934), this Court is of the opinion that in the case at hand the form must be recognized because it is a true reflection of the substance, i. e., a planned liquidation for tax motives and an unplanned subsequent incorporation for business motives. Mr. Swanson's legitimate liquidation for tax motives, which the Government presumably would not have challenged had there been no subsequent incorporation, should not be rejected simply because practical exigencies of the construction business forced the incorporation. Additionally, the Court would like to direct the Government's attention to portions of the language of *Gregory* quoted in the Government's brief at 28: The opinion refers to the "consummation of a preconceived plan" and also to the fact that the second corporation in that case was brought into existence for "no other purpose" than "to transfer a parcel of corporate shares" to the taxpayer (293 U.S. at 469, 55 S. Ct. at 267). Both these factors are absent here: There was no preconceived plan to incorporate again, and the second incorporation was for a non-tax business motive. The relevance of these two facts is in no way diminished by the fact that the liquidation itself was tax-motivated.

2. *There was no Reorganization of Old into New Stockton under Sec. 368(a) (1) (D), (E), or (F).*

The second major branch of the Government's case is the contention that there was in effect no liquidation because there was in fact and law a reorganization under Subsection (D), (E),

or (F) of Sec. 368(a) (1). The Court will examine each one of these alleged reorganizations in reverse order, the order of increasing complexity.

The first question is whether there was a type F reorganization. Contrary to the position of the United States, the Court finds that there was a change in the form and substance of Mr. Swanson's enterprises, sufficient to find more than a mere change in identity or form. The changes in legal form, the changes in the balance sheets, and the changes in the lines of work engaged in all support this finding of the Court.

The second question is whether there was a type E reorganization. Again the conclusion of the Court is negative. A type E reorganization is defined simply as a "recapitalization," without further elaboration. As Bazley v. Commissioner of Internal Revenue, 331 U.S. 737, 741, 67 S.Ct. 1489, 91 L.Ed. 1782 (1947), indicates, to attempt an "abstract definition" of the concept may be futile. One must look at the particulars to judge. It can be said, however, that the Government's application of this portion of the statute rests on a notion of the identity of the two corporations. This Court rejects that notion. It finds no such identity and therefore no "recapitalization" despite the partial similarities in capital structure.

The third and last question is whether there was a type D reorganization. This type of reorganization is defined with reference to certain requirements of Sections 354, 355, and 356. Only Section 354 is relevant in this case. There are two requirements under Section 354. One is that there be a "plan of reorganization;" the other is that there be a transfer of substantially all the assets from the "old" to the "new" corporation. This Court's finding is that there was no overall plan to transfer the bulk of the operating assets from the old to the new corporation. Things worked out in that fashion because of the course of events, not because of a prior plan, for there was no such plan. Furthermore, the Court agrees with plaintiffs' conten-

tion that the evidence does not show there was a transfer of *substantially all* the assets. Although there was undoubtedly a continuity and identity between the two corporations in the key employees, the goodwill and reputation of Mr. Swanson, and in some operating equipment rented from Mr. Swanson, there was nevertheless a significant discontinuity, a failure to transfer the liquid assets of the original corporation. Simon v. United States, 402 F.2d 272, 280, 185 Ct.Cl. 291 (1968), makes it clear that liquid assets must be considered as among the "operating assets" of a business which is engaged in getting jobs on bids. The amount of liquid assets affects bonding capacity and thus the size of job which can be undertaken. Therefore a failure to transfer these liquid assets, as occurred in this case, is necessarily a failure to transfer substantially all the assets.

Additionally, Simon v. United States, *supra*, establishes the proposition that a transfer of all the assets is of no consequence if it was not pursuant to a plan of reorganization.

The Court recognizes the similarity of the case at hand to the case of Abegg v. Commissioner, 429 F.2d 1209 (2nd Cir. 1970), wherein the Court found a liquidation-reincorporation to be a D type reorganization. This Court thinks that one important fact distinguishes this case from *Abegg:* There was no plan to reorganize because there was never any pre-existing intention to reincorporate. This fact puts the case at hand in the same posture as Pridemark, Inc. v. Commissioner of Internal Revenue, 345 F.2d 35 (4th Cir. 1965). Accordingly, the Court finds that there was not a D type reorganization.

Thus the defendant United States has failed to establish a D, E, or F reorganization because of failure to meet the respective requirements of each type. The plaintiffs have proved the negative, i. e., no reorganization. It is admitted by the United States that there is no possibility of an A, B, or C reorganization under Section 368(a) (1). If a taxpayer is to be held strictly to the requirements of these subsections in order to get such benefits as it affords, so must the tax collector when the subsection would favor it. If strict requirements of compliance with the various requirements of Section 368 are demanded of the citizen, they must also be demanded of the Government. A flexible standard of interpretation, which allows finding reorganization upon a loose construction of the statute when it favors the Government cannot be countenanced. There must be one rule and one interpretation, in the interests of logical consistency and justice to all.

It is this Court's judgment that this is not a case involving a partial liquidation, nor is it a case involving a planned reorganization, but is one in which the Court finds the fact to be that there was a "complete liquidation" of Old Stockton in 1960 and that the respective tax liabilities of the plaintiffs and of Old Stockton were properly determined pursuant to the terms of Sections 331 and 337 of the Internal Revenue Code respectively, and that the amounts paid by plaintiffs, refunds of which are sought in this action, were erroneously collected, and plaintiffs are entitled to a refund thereof with interest thereon as provided by law.

It is therefore ordered that judgment be entered in plaintiffs' favor. Let plaintiffs prepare and lodge with the Clerk of this Court and with counsel for the United States a form of judgment in accordance with this Memorandum and Order and applicable statutes and rules.