439 F.2d 409
 E. Robert BREECH, Jr., and Mara W. Breech, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant.
Melvin C. DRUMMOND and Dorothy M. Drummond, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant.
Albert W. HAENSLI and Ragna S. Haensli, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant.
 Nos. 23914-23916.
 United States Court of Appeals, Ninth Circuit.
 March 10, 1971.
 
 Ernest J. Brown (argued), Atty., Tax Div., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson and Gilbert E. Andrews, Tax Div., Washington, D. C., Wm. Matthew Byrne, Jr., U.S. Atty., Los Angeles, Cal., for appellant.
 John C. Argue (argued), of Flint & MacKay, Los Angeles, Cal., for appellees.
 Before DUNIWAY, HUFSTEDLER, and KILKENNY, Circuit Judges.
 HUFSTEDLER, Circuit Judge:
 
 
 1
 The Government seeks reversal of a judgment of the district court awarding tax refunds to taxpayers E. Robert Breech, Melvin C. Drummond, and Albert W. Haensli.[1]
 
 
 2
 The taxpayers were the principal shareholders of Valley Ford Sales ("Valley-1"), a California corporation operating a Ford dealership in Fresno, California. In May of 1957, Valley-1 sold all its assets to a newly formed corporation, also named Valley Ford Sales ("Valley-2"), which was owned 20 percent by Drummond and 80 percent by San Jose Ford Sales Company ("San Jose"), a corporation owned approximately 75 percent by Breech and Haensli. Valley-1 was liquidated after the sale to Valley-2, and the proceeds from the sale were distributed pro rata to its stockholders. All of the taxpayers declared the income realized from the sale as long term capital gains pursuant to the provisions of sections 331 and 337. The Commissioner asserted that the amounts received should be considered either a dividend or boot in a reorganization and taxed as ordinary income. The taxpayers paid the deficiency assessments and sued for their respective refunds in the district court.
 
 
 3
 The district court found that the sale was motivated by the taxpayers' interest in reinvigorating the faltering dealership by placing Valley-1's assets in San Jose's control; San Jose had a capital situation far superior to Valley-1's, and it had more talented personnel available to run the business. After concluding that the sale was supported by a valid business purpose, the district court found no reason to deny the taxpayers the benefit of sections 331 and 337, and it accordingly awarded them their refunds.
 
 
 4
 The Government makes three arguments on appeal, two of which may be treated quickly. First, it argues that the liquidation of Valley-1 cannot qualify as a "complete liquidation" within the meaning of sections 331 and 337 because the assets of Valley remained in corporate solution under the effective control of the same taxpayers who controlled Valley-1, even though Valley-1 was completely dissolved under California law, citing dicta from three circuits. (See Babcock v. Phillips (10th Cir. 1967) 372 F.2d 240, 243, cert. denied, 387 U.S. 918, 87 S.Ct. 2030, 18 L.Ed.2d 970; Davant v. Commissioner of Internal Revenue (5th Cir. 1966) 366 F.2d 874, 882-883; Pridemark, Inc. v. Commissioner of Internal Revenue (4th Cir. 1965) 345 F.2d 35, 41.) We reject the dicta,[2] and we adopt the holding of the Second Circuit with its rationale that neither the language of sections 331 and 337 nor the legislative history of those sections sustains the Commissioner's interpretation, so long as the taxpayers' action is supported by a valid business purpose. (Commissioner of Internal Revenue v. Berghash (2d Cir. 1966) 361 F.2d 257; See, Gallagher v. Commissioner of Internal Revenue (1962) 39 T.C. 144.) Next, the Government argues that because these transactions could have been easily cast in other molds that would have resulted in greater tax, the transactions ought to be taxed as if the alternative methods had been used. We disagree. A taxpayer is not obliged to maximize his taxes. When, as here, a taxpayer has a valid business purpose supporting the challenged transactions, he is entitled to whatever tax benefits may flow from the method he has chosen to accomplish that purpose.
 
 
 5
 The Government's most substantial argument is that the sale of the assets of Valley-1 to Valley-2 constituted a reorganization within the meaning of section 368(a) (1) (D). If the Government is right, the money distributed to the shareholders of Valley-1 is boot, and it is taxable as ordinary income to the extent of Valley-1's accumulated earnings and profits under section 356.
 
 
 6
 Section 368(a) (1) (D) defines a reorganization as "a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred." "Control," defined as 80 percent ownership, is the critical question in this case. The stockholders of Valley-1 directly own 20 percent of the stock of Valley-2; the remainder is owned by San Jose. However, Valley-1 shareholders own 75 percent of San Jose. The Government recognizes that it cannot reach the requisite control by obliterating San Jose's separate identity because the district court's factual findings leave no room for even an inference that the transactions were a sham or that San Jose was a strawman. The Government therefore resorts to a novel argument based on its reading of the phrase "any combination thereof" used in section 368(a) (1) (D) in referring to the stockholders of the transferor corporation. It says that that "combination" must mean a formalized association of some nature organized to exercise joint ownership over the transferee corporation. That association could take the form of a partnership or of a corporation like San Jose. The stock owned by San Jose should be treated as if it were owned by a "combination" of San Jose's principal shareholders, Breech and Haensli, and as so treated the control requirements of section 368(a) (1) (D) are satisfied. The Government points to the fact that reference to an informal grouping of the transferor's shareholders holding the transferee's stock in their individual capacities would be covered by the phrase "one or more of [the transferor's] shareholders." The phrase "any combination thereof" should be interpreted to refer to some kind of joint ownership, because any other reading is tautological.
 
 
 7
 The Government's argument is ingenious, but unpersuasive. In section 318, Congress provided very elaborate rules for treating stock owned by a corporation as if it were owned directly by that corporation's shareholders. Those rules could have been applied to cases of this sort, but Congress chose not to do so. It is highly unlikely that Congress intended to reach the same result by using an undefined phrase and leaving to the courts the unenviable task of drawing the largely arbitrary lines that would determine the circumstances under which a corporation would be treated as a "combination" of its shareholders. Moreover, the legislative history indicates that "any combination thereof" was intended to serve a far more mundane purpose. Section 112(g) (1) (D) of the 1939 code, the predecessor of section 368(a) (1) (D), required that control must rest in "the transferor or its shareholders or both." The last quoted phrase could have been construed to require that all of the transferor's shareholders had to belong to the control group when the control requirement was to be met by aggregating the transferor and its shareholders. Congress devised the phrase "any combination thereof" to evidence its intent that some, rather than all, of the transferor's shareholders could combine with the transferor in meeting the control requirement. (S. Rep.No.1622, 83d Cong., 2d Sess., reprinted in 3 U.S.Code Cong. & Admin. News (1954), pp. 4621, 4912.)
 
 
 8
 The judgments are Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The taxpayers' spouses were joined only because joint returns were filed
 
 
 [2]
 The Fifth Circuit has already cast doubt upon the future of the dictum inDavant, noting, in Genecov v. United States (5th Cir. 1969) 412 F.2d 556, 562, that:
 "In addition, there may be a complete liquidation even if the business of the liquidated corporation is continued by the new corporation. Commissioner of Internal Revenue v. Berghash, 2 Cir., 1966, 361 F.2d 257."