**Stanley B. ROSE, and June Rose, husband and wife, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 79–4012.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1980.

Decided March 12, 1981.

Joe Tretheway, Seattle, Wash., argued, for plaintiffs-appellants; Walter G. Clayton, III, Seattle, Wash., on brief.

R. Bruce Johnson, Dept. of Justice, Washington, D.C., for defendant-appellee.

Before WRIGHT, CHOY and ANDERSON, Circuit Judges.

CHOY, Circuit Judge:

This is an appeal from a summary judgment of the United States District Court dismissing appellants' suit for a refund of income taxes allegedly overpaid for 1969. The issue presented is whether the district court was correct in finding that it is not necessary for the Government to prove a tax-avoidance motive in order to treat as a corporate reorganization under § 368(a)(1)(D) of the Internal Revenue Code of 1954 a transaction that taxpayers have characterized as a liquidation. We agree with the district court and affirm the judgment.

I.  *Facts*

Appellants Stanley and June Rose owned all of the shares of capital stock of two corporations, Port Dry Kiln Company (Port Dry Kiln) and Exeter Lumber Sales Company (Exeter).[1] Stanley Rose was president of both corporations, and Stanley Rose, June Rose and Jerry Houston constituted the board of directors of both corporations during all relevant years.

Exeter was incorporated in 1955 and operated a sawmill. In January 1962, appellants organized Port Dry Kiln for the purpose of drying the lumber produced by Exeter. Port Dry Kiln's facilities consisted of two dry kilns constructed by the Port of Longview, a Washington State municipal corporation, and leased to the company, and a third dry kiln constructed by Port Dry Kiln on land leased to it by the Port of Longview.

The Exeter sawmill was located approximately three quarters of a mile from the kiln facilities. Exeter also had a planing mill on Port of Longview property adjacent to the kilns. All of Exeter's lumber was dried by Port Dry Kiln, accounting for about 90 percent of the use of the kilns.

On November 21, 1968, the directors and shareholders of Port Dry Kiln authorized the dissolution of Port Dry Kiln effective November 30, 1968.[2] On that day, Port Dry

---

1. Stanley Rose owned 100 percent of the stock of Port Dry Kiln and 100 percent of the stock of Exeter Lumber. June Rose had a 50 percent interest in said stock by virtue of her community property rights in the State of Washington.

2. The dissolution papers were filed with the Secretary of State of the State of Washington on or about December 2, 1968. Thereafter articles of dissolution were filed on December 11,

Kiln transferred to Exeter its right, title and interest in the leases with the Port of Longview. Exeter gave no consideration. Port Dry Kiln also sold the third kiln to Exeter for $72,740.46 which was the depreciated value as reflected on Port Dry Kiln's books.

On January 2, 1969, the remaining asset of Port Dry Kiln—$318,818 in cash—was distributed to appellants pursuant to the plan of dissolution. After the dissolution and purported liquidation of Port Dry Kiln, Exeter continued to operate the dry kilns until November 18, 1974, when the assets of Exeter were sold to a third party.

Appellants treated the receipt of the cash as a distribution in complete liquidation, and under I.R.C. §§ 331 and 337 reported their receipt of the $318,318 ($318,818 less the $500 basis in the Port Dry Kiln Stock) as qualifying for treatment as long-term capital gain. The Commissioner of Internal Revenue determined that the distribution was taxable as ordinary income and issued a statutory notice of deficiency. Appellants paid the asserted deficiency[3] and filed a claim for refund. The Commissioner denied the claim and appellants then brought this suit for refund in the district court.

The district court granted summary judgment for the Government, on the ground that the purported liquidation of Port Dry Kiln was, in effect, part of a reorganization under I.R.C. § 368(a)(1)(D). Cash received in a Section D reorganization is taxed as ordinary income. This appeal followed.

## II. Issues

This appeal presents three basic issues:

1. Did the transaction between Port Dry Kiln and Exeter meet the technical requirements of § 368(a)(1)(D)?

2. In the absence of proof of any intent to avoid taxes, was it error for the district court to characterize the transaction as a § 368(a)(1)(D) reorganization rather than a § 337 liquidation?

3. Was summary judgment appropriate?

## III. Analysis

Within the Internal Revenue Code, there are two bodies of law that apply to the facts of this case. The first body of law consists of the corporate liquidation provisions found in I.R.C. §§ 331 and 337 which allow for preferential tax treatment to a liquidating corporation and its shareholders. Basically, § 337 provides that if a corporation distributes all of its assets within a 12–month period after the adoption of a plan of complete liquidation, no gain or loss will be recognized on the sale or exchange of its property within that 12–month period so long as there has been a complete liquidation of the corporation within that same period. Section 331 provides in part:

> Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for stock,

and that:

> Section 301 ... shall not apply to any distribution of property ... in ... complete liquidation.

Therefore, all gain of the shareholder of a liquidating corporation on the exchange of his stock is characterized as a capital gain. This rule applies even if there are significant earnings and profits that would have been taxed as a dividend in the recipient's income.[4]

The other body of law dealing with changes in corporate structure, though not necessarily with changes in the business of the corporation, are the corporate reorgani-

1968 with the Secretary of State of the State of Washington in accordance with the laws of the State of Washington.

**3.** The Roses paid, on April 2, 1973, the statutory deficiency assessed of $131,549.55, plus statutory interest of $23,107.67. In his deficiency notice, the Commissioner had determined that only $318,318 of appellants' receipts were taxable as ordinary income. Inasmuch as the Com-

missioner was time-barred from asserting additional deficiencies, the final judgment treated only this $318,318 (rather than their total receipts of $318,818) as ordinary income.

**4.** The Government does not dispute that the Roses met the technical requirements for a § 337 liquidation.

zation statutes. Section 368(a)(1)(D) of the Internal Revenue Code defines the term reorganization to include:

a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356.

The corporate reorganization sections allow one corporation to exchange its assets or stock, depending on the type of reorganization, for stock in an acquiring corporation without the recognition of gain or loss (I.R.C. § 361). I.R.C. § 354 provides that generally when a shareholder exchanges his stock or securities in one corporation for stock or securities in another corporation, and both corporations are parties to the reorganization, no gain or loss will be recognized. However, § 356(a) provides that if the stockholder receives any money or property other than stock in the reorganization, any gain on the transaction must be recognized to the extent of this "boot," i. e., the sum of the money and the fair market value of the other property received.

With respect to whether the gain is taxable as a capital gain or as ordinary income, § 356(a)(2) provides as follows:

*Treatment as dividend.* If an exchange is described in paragraph (1) but has the effect of the distribution of a dividend, then there shall be treated as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be treated as gain from the exchange of property.

The Government asserted that the transactions between Port Dry Kiln and Exeter resulted in a Section D reorganization. Several courts have reclassified as reorganizations transactions characterized by taxpayers as liquidations.[5] The district court found that the distribution in this case was in effect a dividend since appellants received cash and did not forfeit control over the corporate assets as their equity percentage in the assets remaining in corporate ownership was unchanged. In addition, the Government assumed, and the Roses did not deny, that the corporation's earnings and profits account immediately before the distribution, for the purposes of I.R.C. § 356(a)(2), equaled the amount of the distribution ($318,818) to the taxpayers. Since appellants were the sole shareholders of Port Dry Kiln, the entire $318,318 of the corporation's earnings and profits was allocable to them and the entire amount of the $318,318 gain was received as a dividend. Thus, the $318,318 must be treated as ordinary income on the distribution from Port Dry Kiln.

If the Exeter-Port Dry Kiln transactions were a Section D reorganization the distribution to the Roses would be covered by the "boot" provisions of § 356 and thus would be treated as ordinary income rather than the more favorable capital gain afforded in a liquidating situation.

### A. Requirements of Section 368(a)(1)(D)[6]

There are four basic requirements in § 368(a)(1)(D): (1) control; (2) distribution of stock or securities; (3) transfer of assets; and (4) a plan of reorganization. "Control" of the transferee corporation requires that there be shareholder control of 80 percent

---

**5.** *Atlas Tool Co. v. Commissioner*, 614 F.2d 860 (3rd Cir.), *cert. denied*, 101 S.Ct. 110 (1980); *Moffatt v. Commissioner*, 363 F.2d 262 (9th Cir. 1966); *Davant v. Commissioner*, 366 F.2d 874 (5th Cir. 1966).

**6.** It is not clear if appellants challenge the district court's decision that the Exeter-Port Dry Kiln transaction met the technical requirements of § 368(a)(1)(D).

of the total combined voting power and 80 percent of the total nonvoting shares of the corporation. I.R.C. § 368(c). The control element is clearly satisfied here as appellants owned all of the capital stock of both Exeter and Port Dry Kiln at all relevant times.

■ No stock or securities were distributed to the Roses. But despite the language in § 368(a)(1)(D), courts have held that a distribution of stock or securities is not necessary where ownership of the transferor and transferee corporations is identical, because such a distribution would be a mere formality. *Atlas Tool Co. v. Commissioner*, 614 F.2d 860, 865 (3rd Cir.), *cert. denied*, —— U.S. ——, 101 S.Ct. 110, 66 L.Ed.2d 43 (1980); *Davant v. Commissioner*, 366 F.2d 874, 886–87 (5th Cir. 1966), *cert. denied*, 386 U.S. 1022, 87 S.Ct. 1370, 18 L.Ed.2d 460 (1967). Since the Roses owned all the stock of both the transferor and transferee corporations we hold that no distribution of stock or securities was necessary to meet the requirements of § 368(a)(1)(D).

A distribution pursuant to § 368(a)(1)(D) must also qualify under § 354 or § 355 in order for § 356 to be applicable. Section 355 concerns the distribution of stock or securities of a controlled corporation and is not applicable to this case.

Section 354(a)(1) provides that "[n]o gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization." [7]

However, § 354(b)(1) limits the application of § 354(a)(1) by requiring that:

Subsection (a) shall not apply to an exchange in pursuance of a plan of reorganization within the meaning of section 368(a)(1)(D), unless—

(A) the corporation to which the assets are transferred acquires *substantially all* of the assets of the transferor of such assets. (Emphasis added.)

Generally, the "substantially all" requirement is determined by focusing on the transfer of the *operating* assets by the transferor and not on the non-operating or liquid assets such as cash. In this case all the operating assets—the three kilns and leases—were transferred. Only the cash was not transferred. In *Moffatt v. Commissioner*, 363 F.2d 262 (9th Cir. 1966), *cert. denied*, 386 U.S. 1016, 87 S.Ct. 1370, 18 L.Ed.2d 453 (1967), this court held that the transfer of key personnel and operating assets qualified as substantially-all, even though non-operating physical assets such as land were retained. But in *Swanson v. United States*, 479 F.2d 539 (9th Cir. 1973), this court affirmed a district court finding that the failure to transfer liquid assets precluded satisfaction of the substantially-all requirement. *Swanson* is distinguishable from the present case because it was grounded on the district court's holding that the liquid assets were *essential operating* assets of the corporation. *Swanson* involved an underground pipe construction business with a need for liquid assets to secure required bonding.

In this case, the district court held that all the operating assets were transferred. Appellants give no reasons for finding the cash to be an essential operating asset of Port Dry Kiln. We find that the requirement of transferring "substantially all" of the Port Dry Kiln assets has been met.

■ ■ Section 354(b)(1)(B) requires that the distribution of securities in a Section D reorganization be "in pursuance of the plan of reorganization." A formal written document is not necessary. The district court found that the minutes of the November 21, 1968 meeting of the Board of Directors of Port Dry Kiln authorizing the dissolution of that corporation and the subsequent transfer of its operating assets to Exeter and the payment of the sale proceeds to appellants

---

7. Where there is complete identity of ownership, § 354, like § 368(a)(1)(D), has been construed not to require the meaningless formality of such an exchange. *Atlas Tool Co. v. Commissioner*, 614 F.2d at 865; *Wilson v. Commissioner*, 46 T.C. 334, 344 (1966); *James Armour, Inc. v. Commissioner*, 43 T.C. 295, 307.

provided sufficient evidence that the distribution was a part of a plan of reorganization. The sale and distribution was clearly part of an overall plan to have the lumber-drying operation done by Exeter. The controlling shareholders chose to call the transaction a plan of liquidation. If what resulted was in fact a plan of reorganization, the chosen label is not dispositive. *Atlas Tool Co. v. Commissioner, supra,* at 866; *Wilson v. Commissioner,* 46 T.C. 334, 345 (1966).[8]

We conclude, as did the district court, that the transaction which resulted in the distribution of the $318,818 to the Roses met all the statutory requirements of a § 368(a)(1)(D) reorganization.

### B. Application of Section 368(a)(1)(D)

The Roses contend that if taxpayers structure a transaction as a sale and liquidation, Section D can be applied to reclassify the transaction as a reorganization only if the Government can show a tax-avoidance motive in the taxpayer's structuring of the transaction. Appellants essentially argue that if a transaction meets the requirements for both a § 337 liquidation and a § 368(a)(1)(D) reorganization, the Government is precluded from considering the transaction to be a Section D reorganization if the taxpayers are able to show a business purpose for structuring the transaction as a sale and liquidation. The Government contends that Section D applies as a matter of law when its technical requirements are met.[9]

In making their argument the appellants rely on cases in which the courts have recharacterized transactions as reorganizations after finding the transactions to be contrived plans to bail out corporate earnings and profits without appropriate payment of taxes. In *Gregory v. Helvering,* 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935), the Supreme Court held that taxpayers cannot take advantage of the tax-free reorganization provisions of the Internal Revenue Code in absence of a business purpose for the transaction other than a purpose to avoid taxes.[10]

8. The Code also requires that the transferor's assets be fully distributed. In the present case all of Port Dry Kiln's assets, including the cash proceeds from the sale to Exeter, were in fact distributed.

9. The Government conceded for the purpose of the summary judgment motion that there were legitimate business purposes for the sale of Port Dry Kiln's assets to Exeter and the liquidation of Port Dry Kiln.

10. In their arguments, appellants also rely on *Breech v. United States,* 439 F.2d 409 (9th Cir. 1971), in which the court refused to apply Section D upon finding that the control requirement had not been met. *Breech,* has no application to this case since control is not at issue here.

In addition, appellants rely heavily on *Frank Lyon Co. v. United States,* 435 U.S. 561, 98 S.Ct. 1291, 55 L.Ed.2d 550 (1978), in which the Supreme Court, over the objection of the IRS, held that there was a valid sale-and-leaseback transaction for tax purposes where business exigencies, legal relationships, legal obligations, and the competitive environment in addition to tax factors shaped the business transaction. Appellants read *Frank Lyon* to say a valid business purpose should be considered in determining whether the reorganization or the liquidation rules should apply to a particular transaction.

The Government sees *Frank Lyon* as holding that taxation should be determined on the basis of all the transactions involved. They distinguish *Frank Lyon* by contending that in that case the Government wanted to disregard the sale-and-leaseback formation while in this case the Government is not avoiding the sale and liquidation structure, but simply treating it as what it is, a Section D reorganization as a matter of law.

*Frank Lyon* concerns an entirely different factual situation and is hardly "dispositive" of this case as appellants claim. Although it considers a valid business purpose to be important, we find the Government's interpretation of its application to this case to be correct.

Appellants also rely on the legislative history of § 368(a)(1)(D). They quote from the conference report:

The House bill in section 357 contained a provision dealing with a device whereby it has been attempted to withdraw corporate earnings at capital gains rates by distributing all the assets of a corporation in complete liquidation and promptly reincorporating the business assets. This provision gave rise to certain technical problems and it has not been retained in the bill as recommended by the accompanying conference report. It is the belief of the managers on the part of the House that, at the present time the possibility of tax avoidance in this area is not sufficient-

On its face, § 368(a)(1)(D) does not require a finding of tax avoidance before it can be applied. In the recent case of *Atlas Tool Co. v. Commissioner, supra*, the Third Circuit considered an almost identical factual situation. The court held that no tax-avoidance motive need be found in order to classify as a Section D reorganization a transaction which consisted of the dissolution of one corporation and transfer of its assets to another corporation. The court based its holding on the fact that the I.R.C. provisions governing taxation of reorganization were intended to apply only to transactions that were founded upon a business purpose. The court stated:

> There is no disagreement among the parties that a business purpose is required for a *reorganization*. The [appellants] contend that there was a business purpose for *liquidation* as opposed to reincorporation, and that from this business purpose for liquidation one can infer a non-tax avoidance motive for the overall transaction. However, the liquidation-reincorporation doctrine is aimed at recharacterizing liquidations in light of the entire transaction, notwithstanding *liquidation* motives. Thus the liquidation pur-

pose alone, and therefore the inference of a non-tax avoidance motive from it, cannot by definition be dispositive, and certainly does not prevent the characterization of the transaction as a D reorganization. (Footnotes omitted.)

*Atlas, supra*, at 866.

We agree with the reasoning and conclusion of the Third Circuit in *Atlas Tool*.[11] We hold that once a sale and liquidation meets the technical requirements of § 368(a)(1)(D), it can be reclassified as a Section D reorganization without the necessity of the Government showing that the transaction was structured as a sale and liquidation to receive more favorable tax treatment. The fact that the taxpayers can show a valid business purpose for the sale and liquidation does not preclude a qualifying transaction from being classified as a Section D reorganization.

## III. *Summary Judgment*

The only remaining issue concerns the appropriateness of the granting of summary judgment in this case. Rule 56(c) of the Federal Rules of Civil Procedure provides

---

ly serious to require a special statutory provision. It is believed that this possibility can appropriately be disposed of by judicial decision or by regulation within the framework of the other provisions of the bill. H.Conf. Rep.No. 2543, 83d Cong.2d Sess. 41 (1954), 100 Cong.Rec. 12410.

In *Pridemark, Inc. v. Commissioner*, 345 F.2d 35 (4th Cir. 1965), *overruled in different part, Of Course, Inc. v. Commissioner*, 499 F.2d 754 (4th Cir. 1974), the Fourth Circuit discussed this same paragraph in a somewhat similar case. The court stated:

> Just what force should be given to the italicized passage is unclear. Courts resort to congressional history for an explanation of changes incorporated in legislation. While a conference report cannot be used to make new law, it is clear here that the committee was aware of the problem and thought the present statutory scheme adequate to deal with it. We agree with the conferees' reading of the Code but hold that the facts of this case do not bring it within the "reincorporation" area because the transactions were not motivated by a desire to avoid the payment of taxes. (Footnote omitted.)

*Pridemark, id.* at 41. But in *Pridemark* the Government was contending that the transac-

tion fell under § 368(a)(1)(F) not § 368(a)(1)(D). Section F differs significantly from Section D in that it is a type of catch-all category that defines a reorganization as "a mere change in identity, form or place of organization, however effected." In addition, because Section D does not appear to have been in issue in *Pridemark* the court's statements concerning it are dicta.

We agree with the Government's interpretation of this report as saying the situation is already covered by existing statutes and regulations.

**11.** The court in *Atlas Tool* went on to hold that in order for a transaction, classified by a taxpayer as a liquidation, to be treated as a Section D reorganization a nonstatutory continuity-of-business-enterprise test must be satisfied. The test is whether objectively there was a continuity of business rather than a termination of business. The court stated, "what is critical is whether the new corporation carries forward the business enterprise of the old." *Atlas Tool Co. v. Commissioner, supra*, at 866–67. We choose not to require this nonstatutory test.

that summary judgment shall be rendered if the record before the court shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. The court must view the facts in the light most favorable to the opposing party and give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *Heiniger v. City of Phoenix*, 625 F.2d 842, 843 (9th Cir. 1980); *Garter-Bare Co. v. Munsingwear, Inc.*, 622 F.2d 416, 422 (9th Cir. 1980). In this case the undisputed facts clearly establish that the Port Dry Kiln liquidation and sale met the requirements for a Section D reorganization. Given our agreement with the district court's conclusion that the existence of a business purpose or non-tax-avoidance purpose for a liquidation does not preclude a sale and liquidation from falling under Section D summary judgment was appropriate and the Government was entitled to prevail as a matter of law.

IV. *Conclusion*

The decision of the district court is AFFIRMED.