**Louis F. VIERECK**

v.

**The UNITED STATES.**

**No. 600–81T.**

United States Claims Court.

Nov. 3, 1983.

---

1982, it was 13.79 percent; and for the first 4 months of 1983, it was 11.76 percent.

**15.** 41 U.S.C. § 611 (Supp. V 1981).

**16.** *See Jones v. United States,* 3 Cl.Ct. 4 (1983).

Bruce W. Powell, Columbus, Ohio, for plaintiff, with whom was also Henry Thompson Nicholas, Columbus, Ohio.

J. Walker Johnson, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

In this tax refund suit, plaintiff, Louis F. Viereck, seeks a refund of individual income taxes allegedly erroneously assessed and paid for the taxable year 1972 in the total amount of $75,418.68, plus interest.

During the calendar year 1972, plaintiff, the sole shareholder of Viereck the Florist Inc. (VFI), received a distribution from VFI in the total amount of $396,278.17 which amount he treated as a complete liquidation under section 331, Title 26 U.S.C.[1] He reported the distribution on his federal income tax return as a long-term capital gain from the exchange of his stock. The Regional Commissioner of the Internal Revenue Service determined in a 1977 Statutory Notice of Deficiency that because plaintiff reincorporated an identical new business, Viereck Floral Company (VFC), at virtually the same time as the liquidation of VFI, the foregoing liquidating distribution "existed in form but not in substance." Accordingly, the net amount realized[2] from the transaction was treated as a dividend, taxable at

ordinary income tax rates, under sections 301 and 61 of said code.

On September 26, 1977, plaintiff paid the tax deficiency plus interest, as required by the Statutory Notice of Deficiency, in the amounts of $75,418.68 and $22,703.42, respectively. Following said payments, on September 25, 1979, plaintiff filed a claim for refund, Form No. 1040X, for the calendar year 1972, in which demand was made for the entire amount of the September 26, 1977 payment, plus interest accumulated after said payment.

Plaintiff apparently deemed that his claim was denied pursuant to § 6532(a), inasmuch as defendant failed to act on said claim within the six-month statutory period. Thereafter, plaintiff filed suit in this court.

For the reasons which will appear hereinafter, this court sustains the determination of the Commissioner in taxing the net distribution to plaintiff as a dividend at ordinary income tax rates.

## FACTS

At the trial of the issues herein, only one witness was called, Mr. Viereck, the plaintiff. Defendant called no witnesses. The court finds the operative facts[3] adduced into evidence at the trial to be as indicated hereinafter and no separate findings are being filed pursuant to RUSCC 52(a).

The foregoing dividend consisted of the following distributed assets:

| Item | | Amount |
|---|---|---|
| Cash Received | $179,115.01 | |
| Less: Liabilities Assumed | 5,804.18 | $173,310.83 |
| Non-Trade Receivables | | 11,243.64 |
| Cash Value Life Insurance | | 10,921.00 |
| Building * | | 105,752.00 |
| Land * | | 14,248.00 |
| Total Taxable Components (dividend) | | $315,475.47 |

\* The parties stipulated that the land and building referred to above are the State Street and Chapel Street properties, described infra.

---

1. Unless otherwise indicated, all statutes hereinafter cited are from the Internal Revenue Code of 1954, as applicable in calendar year 1972.

2. The net amount realized by plaintiff, as determined by the Regional Commissioner, and includable in gross income under section 61 of the Code, was calculated as follows:

| Item | | Amount |
|---|---|---|
| Gross Assets of VFI | | $402,082.35 |
| Less: Liabilities Assumed | $5,804.18 | |
| Adjustment | 713.00 | |
| Total Adjustment | | (6,517.18) |
| | | $395,565.17 |
| Less: VFI's Assets Transferred to VFC via Plaintiff | | (80,089.70) |
| Dividend to Plaintiff | | $315,475.47 |

3. Some of the facts have been stipulated by the parties and are found accordingly.

In 1911, plaintiff's parents started a retail floral business in Columbus, Ohio. The business operated as a sole proprietorship until 1950. In that year, plaintiff became the sole shareholder of the business, having inherited 50% thereof in 1949 at his mother's death and thereafter having purchased his brother's 50% interest. The business was incorporated in April 1950 under the name of Viereck the Florist, Inc. From that time until its dissolution in December 1972, VFI's stock continued to be wholly owned by plaintiff, and the floral business was conducted from leased premises located in the Norwich Hotel at 84 S. Fourth Street, Columbus, Ohio.[4]

In the early 1960s, due to the progressive deterioration of the premises leased in the Norwich Hotel, plaintiff contemplated the necessity of moving the floral business of VFI to a more desirable downtown location. Accordingly, in January 1966, VFI acquired by assignment a 99-year lease, renewable forever, from Avis Rent-A-Car System, Inc. (Avis) on property located at 179 E. State Street (the State Street property). The acquisition was further evidenced by a Quit Claim deed running from Avis to VFI. A large building previously used by Avis as a parking garage is situated on subject leasehold property, which is located approximately one block away from the Norwich Hotel. At about the same time that VFI acquired the foregoing leasehold interest, it also obtained from Avis, by warranty deed, a small piece of unimproved land located on Chapel Street and contiguous to the State Street property. The Chapel Street property was apparently used as an adjunct parking lot during all periods relevant herein. While definitive evidence was adduced relating only to the use of the State Street property, the parties singularly contended at the trial that the State Street and Chapel Street properties are to be considered as parts of the same property for the purposes of this litigation. (Tr. 86–89.)

In this connection, uncontroverted evidence adduced by plaintiff discloses that from the time of assignment of the leasehold interest in 1966 until 1972, VFI spent approximately $50,000 in converting the building at 179 E. State Street to a facility capable of housing a floral business. The conversion entailed lowering the ceiling, redesigning certain areas into a greenhouse, and installing steel beams in the basement to shore up the floor to support refrigeration equipment.

Desirous of retiring from the day-to-day operation of the floral business and securing the integrity of the Viereck name with respect thereto, plaintiff reached a tentative agreement in October 1970 with one Fred Fisher.[5] This agreement provided, *inter alia,* that Mr. Fisher would initially be employed by VFI to become acquainted with the operations of the floral business. Thereafter the plan would require plaintiff to liquidate VFI and transfer its operating assets to a new corporation to carry on the floral business, with Mr. Fisher to become a substantial owner. In this connection, it was contemplated that Mr. Fisher would initially purchase from Viereck 21% of the stock of the new entity and that he would purchase additional amounts from plaintiff until he obtained 49% of said company's stock. The plan was designed to initially capitalize the new corporation at $50,000 in order to optimize Mr. Fisher's prospects of acquiring the business. However, it aborted in May 1972 when Mr. Fisher declined to go along with it and his employment terminated prior to acquiring any stock in VFI or any new corporation.

Inasmuch as other parties were purportedly interested in acquiring the floral business, pursuant to the broad terms of the so-called Fisher plan, on June 28, 1972,

---

4. While plaintiff has been involved in the floral business all of his working life, he also manages various residential and commercial rental properties which he owns individually or through his wholly-owned corporation, Grant and Long, Inc. Plaintiff is a bachelor, without issue, and became 80 years of age in October 1983.

5. See pages 10 of 15 and 11 of 15, Plaintiff's Exhibit 6; and Stipulation No. 18 dated August 17, 1983.

plaintiff adopted a "plan of liquidation" for VFI, effective as of midnight, June 30, 1972.[6] Additionally, on June 28, 1972, plaintiff also executed Articles of Incorporation for VFC, which were filed on June 30, 1972. Pursuant to said "plan of liquidation," plaintiff received all of the assets of VFI, "including an assignment and a transfer of the 179 E. State Street and Chapel Street properties," on June 30, 1972. (Stipulation No. 22, dated August 17, 1983.) On July 1, 1972, plaintiff then transferred certain operating assets received from VFI, consisting of accounts receivable, inventory, cash, store and office equipment, motorized equipment, and other miscellaneous assets in the aggregate amount of $80,089.70, to VFC.[7] Plaintiff apparently retained his acquired interest in the Chapel Street and State Street properties, inasmuch as no evidence was introduced to reflect a transfer thereof by instrument to VFC.

Following the liquidation of VFI, the corporation was not dissolved until December 29, 1972, when a certificate of dissolution was filed with the Secretary of State of Ohio. Plaintiff candidly admitted on direct and cross-examination that VFC continued the identical business previously engaged in by VFI at 84 S. Fourth Street. The court therefore finds that from and after July 1, 1972, VFI was simply a dormant shell.

Plaintiff further admitted that the floral business was continuously operated by VFC at 84 S. Fourth Street from July 1972 to 1975; that during this period VFC utilized the Chapel Street and State Street properties in its floral business to the same extent that VFI did prior to the liquidation, *i.e.*, between 1966 and 1972; and that in 1975 VFC moved its entire floral business across the street to the 179 E. State Street location.

The reason advanced for the liquidation and simultaneous reincorporation, as testified to by plaintiff, was to make the corporate business more saleable. Mr. Viereck

elaborated on the foregoing by stating that he had several potential buyers interested, but that obtaining adequate financing for such an acquisition presented a substantial problem. He further pointed out that since VFI owned and leased valuable real estate pertinent to the operation of the floral business, he could interest no one who could afford to acquire VFI's stock. For this reason, his accountants advised him to separate the Chapel Street and State Street properties from VFI and lease same to the purchaser, so as to facilitate a sale of *solely* the floral business and other personalty.

## DISCUSSION

### A. The "Liquidation or Reorganization" Question

The primary issue presented in this case is whether, as contended by defendant, the liquidation of VFI and the simultaneous incorporation of VFC in June 1972 constituted a reorganization under §§ 354 and 368(a)(1)(D) or (F) of the Internal Revenue Code. Plaintiff's attempt to refute defendant's contention focuses on the argument that the money and property distributed to him, as a result of the liquidation of VFI, were "amounts distributed in complete liquidation of a corporation" under § 331, and were thus entitled to be treated for tax purposes as a capital gain rather than as a dividend.

At the outset, it should be noted that in tax refund cases such as the instant case, the taxpayer has the burden to prove that the Commissioner is in error. *United States v. Janis*, 428 U.S. 433, 440, 96 S.Ct. 3021, 3025, 49 L.Ed.2d 1046 (1976). "The action to recover on a claim for refund is in the nature of an action for money had and received, and it is incumbent upon the claimant to show that the United States has money which belongs to him." *Lewis v. Reynolds*, 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293 (1932), *quoted in Dysart v.*

---

6. This 1972 plan of liquidation apparently substantially tracked the 1970 tentative plan of liquidation, *supra*. See Stipulation dated August 17, 1983.

7. Attachment A reflects a transcript of VFI's balance sheet on June 30, 1972, and the assets subsequently transferred to VFC as prepared by the Internal Revenue Service.

*United States,* 169 Ct.Cl. 276, 283, 340 F.2d 624 (1965). Additionally, in the liquidation-reorganization area it is especially important to note that the courts will consider a situation as it existed at the beginning and end of a series of steps to determine whether a statutory reorganization occurred, and in such cases the substance of a transaction and not its form will control its tax consequences. *Gregory v. Helvering,* 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935); *Babcock v. Phillips,* 372 F.2d 240, 242 (10th Cir.1967).

■ The liquidation section upon which plaintiff relies [8] was promulgated as an exception to the general scheme of Subchapter C of the Internal Revenue Code, which "broadly contemplates that the retained earnings of a continuing business carried on in corporate form can be placed in the hands of shareholders only after they pay a tax on those earnings at ordinary income rates." *Smothers v. United States,* 642 F.2d 894, 897 (5th Cir.1981).

The courts have therefore limited the application of the § 331 exception to cases in which "[t]he corporation ... [has] ceased to be a going corporate concern, or if the

enterprise is continued in corporate form, the shareholder ... [has] dissociated himself from it." *Babcock v. Phillips,* 372 F.2d 240, 243 (10th Cir.1967), *quoting Pridemark, Inc. v. C.I.R.,* 345 F.2d 35, 41 (4th Cir.1965). Hence, if a liquidation is followed by a reincorporation of the same business with the same stockholders, the sections of the Code governing reorganizations come into play. *Smothers,* 642 F.2d at 897–98 (1981); *Ross Michael Simon Trust v. United States,* 185 Ct.Cl. 291, 303, 402 F.2d 272 (1968); *Davant v. C.I.R.,* 366 F.2d 874, 879 (5th Cir.1966), *cert. denied,* 386 U.S. 1022, 87 S.Ct. 1370, 18 L.Ed.2d 460 (1967); Treas. Reg. § 1.331–1(c). In such cases, the liquidation and reincorporation transactions are collapsed into one transaction, classified as a reorganization under § 368.[9] *Ringwalt v. United States,* 549 F.2d 89, 91 (8th Cir. 1977); *Babcock,* 372 F.2d at 242–43; *Davant,* 366 F.2d at 883. Distributions to shareholders in such reorganizations that have "the effect of the distribution of ... a dividend" are then taxed under the general rule of Subchapter C as ordinary income to the shareholders. *See* sections 356 and 301.

In determining whether a "D" reorganization of VFI into VFC has taken place,[10]

---

**8.** Section 331 provides in pertinent part:

(a) General rule.—
  (1) Complete liquidations.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock.
  (2) Partial liquidations.—Amounts distributed in partial liquidation of a corporation (as defined in section 346) shall be treated as in part or full payment in exchange for the stock.

(b) Nonapplication of section 301.—Section 301 (relating to effects on shareholder of distributions of property) shall not apply to any distribution of property ... in partial or complete liquidation.

**9.** The invocation of the reorganization provisions when triggered by liquidation-reincorporation transactions is consistent with the legislative history of the 1954 Code. In that year, the Senate rejected a provision in section 357 of a bill passed by the House which explicitly attempted to deal with the "reincorporation" problem. In its accession to the Senate's rejection of this provision, the Senate-House Conference Committee made the following comment:

"Liquidation followed by reincorporation.—

... It is the belief of the managers in the part of the House that, at the present time, the possibility of tax avoidance in this area is not sufficiently serious to require a special statutory provision. It is believed that this possibility can appropriately be disposed of by judicial decision or by regulation within the framework of the other provisions of the bill."

H.R.Rep. No. 2543, 83d Cong., 2d Sess. 41, *reprinted in* 1954 U.S.Code Cong. & Ad.News 5280, 5301.

Consistent with the foregoing, the Internal Revenue Service promulgated Reg. § 1.331–1(c), to deal with any possible tax avoidance issues that might surface in the liquidation-reincorporation area, which provides in pertinent part that "[a] liquidation which is followed by a transfer to another corporation of all or part of the assets of the liquidating corporation or which is precluded by such a transfer may ... have the effect of the distribution of a dividend ... and gain is recognized only to the extent of 'other property.' *See* sections 301 and 356."

**10.** A reorganization is defined in section 368(a)(1)(D) as:

a transfer by a corporation of all or a part of its assets to another corporation if imme-

the following statutory requirements must be satisfied:

(1) There must be a transfer by a corporation (§ 368(a)(1)(D));

(2) of substantially all of its assets (§ 354(b)(1)(A));

(3) to a corporation controlled by the shareholders of the transferor corporation, or by the transferor corporation itself (§ 368(a)(1)(D));

(4) in exchange for stock or securities of the transferee corporation (§ 354(a)(1));

(5) followed by a distribution of the stock or securities of the transferee corporation to the transferor's shareholders (§ 354(b)(1)(B));

(6) pursuant to a plan of reorganization (§ 368(a)(1)(D)).

*Smothers,* 642 F.2d at 898.

■ Before testing whether all of the statutory prerequisites of a "D" reorganization are present here, the threshold determination that must be made is whether, upon the dissolution of VFI, there was a continuation of its business by a successor corporation. *Mitchell v. United States,* 196 Ct.Cl. 694, 698, 451 F.2d 1395 (1971); *Atlas Tool Co. v. Commissioner,* 614 F.2d 860, 866–67 (3d Cir.1980); *Lewis v. Commissioner,* 176 F.2d 646, 649 (1st Cir.1949). This element is emphasized in Treas.Reg. § 1.368–1(b) (1956), wherein it is stated, "Requisite to a reorganization under the Code [is] a continuity of the business enter-

prise under the modified corporate form, . . . ."

In the case at bar, plaintiff has readily and candidly conceded that "after the liquidation [he] continued the same business" and that the business of the new corporation, VFC, was "identical" to that of the old corporation, VFI. (Tr. 36.) When this admitted identity of business function is combined with the fact that VFC's Articles of Incorporation were issued on the same day that the plan of liquidation of VFI became effective, it is clear beyond cavil that the continuity requirement for a reorganization was satisfied, and this court so finds. *See Smothers,* 642 F.2d at 896, 901 (continuity requirement met when assets and employees transferred to new corporation, within one month of liquidation); *cf. Mitchell,* 196 Ct.Cl. 694, 451 F.2d 1395 (no continuity found because of two-year interval between reincorporation and liquidation, during which time two businesses were operated in separate locations under different names); *Ross Michael Simon Trust,* 185 Ct.Cl. at 297, 402 F.2d 272 (no continuity found when two corporations operated concurrently as separate entities for more than one year).

■ Turning next to the statutory requirements of a "D" reorganization, it is clear, and this court finds, that elements No. 1 and No. 3—a *transfer* of "all or a part" of the transferor's assets to the transferee, and *control* of the transferee corporation by the shareholder(s) of the transferor—are present here in that $80,089.70 of the total assets were transferred to VFC,

---

diately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356; . . . [.]

Section 354 provides in pertinent part:

(a) General rule.—
(1) In general.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, ex-

changed solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\* \* \* \* \* \*

(b) Exception.—
(1) In general.—Subsection (a) shall not apply to an exchange in pursuance of a plan of reorganization within the meaning of section 368(a)(1)(D), unless—
(A) the corporation to which the assets are transferred acquires substantially all of the assets of the transferor of such assets; and
(B) the stock, securities, and other properties received by such transferor, as well as the other properties of such transferor, are distributed in pursuance of the plan of reorganization.

and that Viereck was the sole stockholder of both VFI and VFC. Both parties have conceded, pursuant to *Survaunt v. Commissioner,* 162 F.2d 753, 756 (8th Cir.1947), that "[i]t is well settled that the transfer of assets via the shareholders as intermediaries or conduits satisfies the 'transfer' requirements of the reorganization provisions." *See Smothers,* 642 F.2d at 900; *James Armour, Inc.,* 43 T.C. 295, 307 (1964). Moreover, elements No. 4 and No. 5, which literally require that the transferee exchange some of its "stock or securities" for the assets of the transferor, and that these items then be distributed to the shareholders of the transferor, "have been uniformly ignored as 'meaningless gestures' in the reincorporation context, in which the same shareholders own all the stock of both corporations." *Smothers,* 642 F.2d at 899–900; *see also Atlas Tool Co.,* 614 F.2d at 865; *Davant,* 366 F.2d at 885–87; *Armour,* 43 T.C. at 307. Because all of VFC's stock was received directly by Viereck as a result of the transfer to it of VFI's assets ($80,-089.70), we further find that requirements Nos. 4 and 5 have also been met.

The most important question in determining whether a "D" reorganization took place in 1972 relates to element No. 2, *i.e.,* whether "substantially all" of the assets transferred by VFI were acquired by VFC. On this issue plaintiff forcefully argues that they were not. He focuses on the fact that of the total value of VFI's gross assets of $402,000, only 20% ($80,089) was transferred to VFC; that the State Street and Chapel Street properties were "operating assets" of VFI prior to July 1972; that said properties, with an aggregate approximate value of $120,000, and constituting the most significant operating assets of VFI, were retained by plaintiff; that the failure by VFC to acquire said realty precludes the "substantially all" asset requirement of Code Section 354(b)(1)(A) from being met; and that therefore, the transaction is clearly a section 331 liquidation, as reported per return.

As recent case law indicates, the "substantially all" analysis begins with the fundamental premise that no precise numerical formula exists to determine the proportion of assets that constitute "substantially all of the assets." *Moffatt v. Commissioner,* 42 T.C. 558, 578, *aff'd,* 363 F.2d 262 (9th Cir. 1966), *cert. denied,* 386 U.S. 1016, 87 S.Ct. 1370, 18 L.Ed.2d 453 (1967); *Armour,* 43 T.C. at 308–09; *see Commissioner v. First National Bank of Altoona,* 104 F.2d 865, 870 (3d Cir.1939). Instead, the courts have generally looked to the nature of the property used, so as to determine whether there was a continuity of enterprise from the transferor to the transferee corporation. *Armour,* 43 T.C. at 308, quoting *Moffatt,* 42 T.C. at 578. Consequently, those assets deemed "non-operating" or "not essential to the transferred business" have been disregarded by the courts in making the "substantially all" determination. *Ross Michael Simon Trust,* 185 Ct.Cl. at 305, 402 F.2d 272; *Moffatt,* 363 F.2d at 267; *Armour,* 43 T.C. at 309.

■ In passing on the question of the meaning of "substantially all," the Fifth Circuit stated in *Smothers,* 642 F.2d at 898–99, that:

> The words "substantially all assets" are not self-defining. What proportion of a corporation's assets is "substantially all" in this context, and less obviously, what "assets" are to be counted in making this determination, cannot be answered without reference to the structure of Subchapter C. To maintain the integrity of the dividend provisions of the Code, "substantially all assets" in this context must be interpreted as an inartistic way of expressing the concept of "transfer of a continuing business."

In the case at bar, assets aggregating $80,089.70, consisting of mobile and other equipment, inventory, cash, and trade accounts receivable transferred to VFC, were indisputably "operating assets" of VFI, and necessary in its business. The cash and other liquid assets transferred by VFI to plaintiff should just as clearly be regarded as part of the non-operating assets. This is so because plaintiff has proffered no evidence to show that these assets

were essential or necessary to VFC's business operations. Moreover, the courts have only considered liquid assets "essential" or "necessary" to businesses when they represented working capital, such as in a business which needed cash to increase its bonding capacity. *See Ross Michael Simon Trust,* 185 Ct.Cl. at 307, 402 F.2d 272; *Swanson v. United States,* 479 F.2d 539, 545–46 (9th Cir.1973); *cf. Armour,* 43 T.C. at 309 (non-working liquid assets transferred to shareholder "not essential to business").

Now, turning to the question of whether the Chapel Street and State Street properties constituted part of the "operating assets" of VFI, defendant claims that the respective properties were "non-operating assets" of VFI in 1972, and that said properties should therefore be disregarded in the section 354(b)(1)(A) analysis. Such is certainly not the case. It is clear from the record that VFI acquired the title to and a leasehold interest in the Chapel and State Street properties in 1966 for the purpose of moving its business in the near future from the deteriorating premises it then occupied. Uncontroverted evidence adduced at trial further indicates that between 1966 and 1972, plaintiff spent approximately $50,000 to transform the State Street building to a floral warehouse as part of "an early start ... to move the floral business to the State Street property."[11] We are therefore compelled to find, contrary to defendant's contention, that the two properties were valuable "operating assets" of VFI.

Once it has been determined that these properties were operating assets of VFI, the next question is whether they were "acquired" by VFC. Plaintiff contends that VFC did not "acquire" the two properties because he personally retained the assignment and deed previously held by VFI. This position cannot be sustained. The essential inquiry respecting the question of whether substantially all of the assets are "acquired" under a section 354 transaction is whether the transferee corporation received the *beneficial use* of those assets. *DeGroff v. Commissioner,* 54 T.C. 59, 73–74 (1970), *aff'd,* 444 F.2d 1385 (10th Cir.1971); *Moffatt,* 42 T.C. at 578, *aff'd,* 363 F.2d at 267; *Armour,* 43 T.C. at 309; *Swanson,* 479 F.2d at 546 (dicta).

The "beneficial use" doctrine might not appear to comport with the literal language of § 354(b)(1)(A), which requires the transferee corporation to "acquire substantially all of the assets of the transferor." However, the legislative history of §§ 354(b)(1)(A) and 368(a)(1)(D), as well as the cases arising under these sections, indicate, however, that Congress's intent in using this language was simply to provide "a limited codification of the general nonstatutory 'continuity of business enterprise' requirement applicable to all reorganizations." *Smothers,* 642 F.2d at 899; *accord, DeGroff,* 54 T.C. at 72. The Senate Report accompanying the 1954 Internal Revenue Code noted that except with respect to divisive reorganizations (covered by § 355), the reorganization provisions of § 354(b)(1)(A) "are the same as under existing law and are stated in substantially the same form." S.Rep. No. 1622, 83d Cong., 2d Sess. 265 (1954), *reprinted in* [1954] U.S.Code Cong. & Ad.News 4621, 4903. The previous applicable law, § 112(g)(1) of the 1939 Code, provided that "[t]he term 'reorganization' means ... the acquisition by one corporation, ..., of substantially all the *properties* of another corporation ...." This provision, in turn, was subject to a "construction which applies a continuity test rather than mere blind percentages." *Southland Ice Co.,* 5 T.C. 842, 850 n. 4 (1945); *see also Milton Smith,* 34 B.T.A. 702, 705 (1936). Thus, the primary concern of Congress and the courts in determining whether substantially all assets have been acquired has been whether there is a "complete continuity of enterprise—the very kind of continuity that is basic to a corporate reorganization...." *Moffatt,* 42 T.C. at 578; *DeGroff,* 54 T.C. at

---

**11.** Because the parties conceded at trial that they viewed both the Chapel and State Street properties, for purposes of this case, as "one property," this court will treat evidence bearing on the use of the State Street property as applicable to both properties.

72.[12] Therefore, we hold that for the purpose of establishing whether "substantially all" of the assets have been acquired in a reorganization, sufficient beneficial use by the transferee of the transferor's operating assets need only be established so as to reflect a substantially complete continuity of enterprise. *Cf. Swanson,* 479 F.2d at 546.

Although the record does not contain an instrument which identifies the type of property right, if any, held by VFC over the two properties, plaintiff's own evidence shows that VFC had this sufficient beneficial use of the properties so as to satisfy the continuity requirements implicit in the "substantially all" test. In this connection, plaintiff testified at trial that the properties were used "for extra storage and various uses that we need for the business" from 1966–72, and further testified that from 1972–75, the properties were "utilized in the same manner." (Tr. at 40–41.) Moreover, plaintiff's testimony regarding the purpose of the 1966 acquisitions from Avis, combined with the renovations made from 1966 to 1972 and the actual move to the State Street location by VFC in 1975, indicate that VFC made the same use of said property—as a site for the imminent relocation of the floral business—as did VFI. Finally, plaintiff's attempt to establish that he "was nothing more than a conduit" respecting those properties, and that the properties "properly belong [to VFC]," indicates his own belief that VFC had full "beneficial use" of the properties after the transactions of 1972. We conclude, therefore, that the "substantially all" asset requirement has been met.

■ The final requirement for a "D" reorganization is that the transactions in question must be conducted "in pursuance of a plan of reorganization." *See Mitchell,* 196 Ct.Cl. at 704, 451 F.2d 1395; Treas.Reg. § 1.368–1(c). The plan of reorganization need not be embodied in a formal written document, and the taxpayer's phraseology is not controlling if the transaction is, in substance, a reorganization. *Smothers,* 642 F.2d at 900, n. 14; *Atlas Tool Co.,* 614 F.2d at 866; *Ralph C. Wilson,* 46 T.C. 334, 345 (1966). Instead of a formal plan, it is settled that the sequence of events can show that a plan of reorganization actually took place. *Simon v. Commissioner,* 644 F.2d 339, 343 (5th Cir.1981); *Yeaman v. United States,* 69–2 USTC, para. 9585, at 85,560 (D.C.Wash.1969); *Liddon v. United States,* 22 T.C. 1220, 1228 (1954), *aff'd,* 230 F.2d 304 (6th Cir.1956). While there was no formal written plan in the instant case, the record persuasively evinces a plan of reorganization.

Although the parties stipulated that plaintiff adopted a "plan of liquidation" on June 28, 1972, the court notes that no document designated a "plan" was submitted into evidence. Instead, plaintiff has submitted the tentative agreement, described *supra,* reached between himself and Fred Fisher in October 1970. The course of action contemplated by the tentative agreement never took place, because Mr. Fisher severed his employment with VFI and declined to go forward with the agreement's provisions in May of 1972. Nonetheless, the transactions of June 1972 and thereafter track the provisions of the 1970 document in most respects, excepting primarily those portions pertinent to Mr. Fisher. Indeed, plaintiff himself contends that the liquidation and reincorporation in 1972 were carried out "pursuant to the [1970 tentative] agreement."

■ However, the circumstances and sequence of events surrounding the 1972 transactions add strong support to the view

---

12. Indeed, the "beneficial use" doctrine appears consistent with the view of commentators on the "substantially all" language of § 354, who have urged that this language be utilized in the reincorporation context to determine whether a continuation of "the essence or identity of a business enterprise ... [to] a succeeding business entity" has occurred. *See* Surkin, The Reincorporation Quandary under Sections 368(a)(1)(D) and 354(b)(1): Comments on *Moffatt v. Commissioner,* 53 Cornell L.Rev. 575, 595 (1968); *see also* Note, New Answers to the Liquidation-Reincorporation Problem, 76 Colum.L.Rev. 268, 276 n. 66 (1976).

that "the separate steps were integrated parts of a single scheme [of reorganization]." *Davant,* 366 F.2d at 883, *quoting Helvering v. Alabama Asphaltic Limestone Co.,* 315 U.S. 179, 184–85, 62 S.Ct. 540, 543–44, 86 L.Ed. 775 (1942). Plaintiff admitted in this connection that the purpose of these transactions was to "provide for the continuation of the family floral business ... by removing the business real estate ..., questionable receivables and excess cash from the business structure." It can be seen, therefore, that as a result of the liquidation and reincorporation, which were executed almost simultaneously, plaintiff remained as the sole shareholder of a business admitted to be "identical" to the liquidated business, which was operated "in its usual, routine fashion." Moreover, it is apparent from VFC's tax returns that plaintiff treated the June 1972 transactions as a reorganization. Instead of capitalizing the operating assets transferred to VFC based upon the property's fair market value (as would normally be done for a newly-incorporated business), he simply substituted the basis of VFI's property, less accrued depreciation. The latter procedure is precisely what is done for transferred assets in a reorganization under §§ 354 and 368.

The transactions of and surrounding June 28–30, 1972, therefore appear to this court to have satisfied the final operative requirement of §§ 368(a)(1)(D) and 354, *i.e.,* that they be made pursuant to a plan of reorganization. Because we hold that a "D" reorganization took place in calendar year 1972, we need not reach the question of whether the 1972 transactions qualify as a reorganization under § 368(a)(1)(F), as defendant claims in the alternative.

### B. The "Boot"

■ Defendant next contends that the entire net distribution to plaintiff of $315,-475.47, known as the "boot," constitutes a dividend taxable as ordinary income under § 356.[13] Plaintiff responds that if the defendant concedes that VFC "acquired" the Chapel and State Street properties in June 1972, then in such case the distribution received by Viereck, as contended by defendant, would necessarily be $120,000 less. In any event, plaintiff emphasizes that the defendant cannot possibly have it both ways.

In order to be subject to. dividend treatment under Code section 356, four basic requirements must be met:

(1) Shareholders must receive property or money in an exchange under §§ 354 or 355;

(2) This property or money must be "other" property or money not eligible for nonrecognition treatment under those sections, *i.e.,* "boot";

(3) The distribution to shareholders must have the effect of a dividend; and

(4) The distribution must not exceed the shareholders' ratable share of the corporation's undistributed earnings and profits. All gains resulting from such distributions found to be dividends are then taxed as provided under § 301 as ordinary income.

There is *no doubt* that the record shows that the distribution of liquid assets to plaintiff in the course of the 1972 reorganization satisfies all the requirements of

---

**13.** In pertinent part, § 356 reads as follows:
(a) Gain on exchanges.—
(1) Recognition of gain.—If—
(A) section 354 or 355 would apply to an exchange but for the fact that
(B) the property received in the exchange consists not only of property permitted by section 354 or 355 to be received without the recognition of gain but also of other property or money,
then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

(2) Treatment as dividend.—If an exchange is described in paragraph (1) but has the effect of the distribution of a dividend, then there shall be treated as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation .... The remainder, if any, of the gain recognized under paragraph (1) shall be treated as gain from the exchange of property.

§ 356, and, given sufficient earnings and profits, *infra,* is therefore taxable as ordinary income. *See Smothers,* 642 F.2d at 898; *Babcock,* 372 F.2d at 243; *Commissioner v. Morgan,* 288 F.2d 676, 680 (3d Cir.1961). Plaintiff makes no effort to seriously contest this point. A more elaborate analysis is required, however, to determine whether the transfer to plaintiff of the State Street and Chapel Street properties qualifies as a dividend under § 356.

Examining the first requirement under this section, it is apparent from facts on the record that the two properties were received by plaintiff in an "exchange" under § 354. Plaintiff submitted into evidence an assignment to him by VFI of the 99-year lease, renewable forever, for the State Street property in 1972, which has gone unchallenged. Although no deed has been introduced into evidence which directly relates to the disposition of the Chapel Street property, the parties have stipulated that "in accordance with the plan of liquidation, ... [there was] an assignment and transfer of the 179 E. State Street and Chapel Street properties" to plaintiff. Moreover, plaintiff's 1972 tax return and the uncontested transcript of VFI's financial statement prepared by defendant collectively indicate that all of VFI's buildings and land, consisting of the Chapel Street and State Street properties, were received by plaintiff in the June 30 "liquidation."

Secondly, we hold that the receipt of these properties was not part of a nonrecognition transfer under § 354 but was in fact "other" property or money, or "boot." Under § 354(a)(1), only those assets of the transferor that are transferred to the transferee corporation are eligible for non-recognition treatment. Plaintiff has not sustained his burden of showing that the two properties were in fact transferred from him to VFC in 1972. He has not only failed to show any passage of title, but he has also failed to show a transfer to VFC of whatever interest he acquired from VFI in either property. Consistent with the foregoing, the record demonstrates that plaintiff's intent was to retain the properties himself and simply make the use thereof available to VFC. Plaintiff himself testified that he went through the liquidation and reincorporation for the sole reason of separating the business's real property from the floral business, so that a buyer would be able to rent rather than purchase the real property when he bought the store. Additionally, plaintiff's 1970 tentative agreement with Mr. Fisher, pursuant to which plaintiff has contended that he liquidated VFI, proposed that plaintiff would retain the properties himself and then rent them out for five years at an annual rate of $12,000. It seems clear from this evidence that plaintiff did not transfer the property interest he received (title to the Chapel Street property and a 99-year lease, renewable forever, for $2,100 per year on the State Street property) to VFC.

Thirdly, evidence in the record also establishes that the distribution of the two properties to plaintiff had the effect of a dividend. In all reorganizations in which "boot" is involved, the phrase "has the effect of a distribution of a dividend" comes into play in order to determine whether the "boot" is a distribution of earnings and profits (dividend) or merely the proceeds of a sale (redemption). Thus, this phrase has been read as *in pari materia* with the phrase "essentially equivalent to a dividend" of § 302(b)(1) governing redemptions. *Ross v. United States,* 146 Ct.Cl. 223, 228, 173 F.Supp. 793, *cert. denied,* 361 U.S. 875, 80 S.Ct. 138, 4 L.Ed.2d 113 (1959); *Idaho Power Co. v. United States,* 142 Ct.Cl. 534, 161 F.Supp. 807 (1958), *cert. denied,* 358 U.S. 832, 79 S.Ct. 53, 3 L.Ed.2d 70 (1959); *see also* B. Bittker and J. Eustice, *Federal Income Taxation of Corporations and Shareholders,* ¶ 14–34 (4th ed. 1979) at 14–118–19. The primary test utilized to determine "dividend equivalence" under § 356 is therefore similar to that of § 302(b)(1)— wether, after the reorganization and distribution, the shareholder still has *the same or substantially the same interest* in the corporation after the payment that he had before. *Ross,* 146 Ct.Cl. at 231, 173 F.Supp. 793; *Idaho Power,* 142 Ct.Cl. at 539, 161

F.Supp. 807; see Treas.Reg. § 1.302–2(b) (1956); S.Rep. No. 1622, 83d Cong., 2d Sess. 49 (1954). Because plaintiff was at all times the sole shareholder of both VFI and VFC, this requirement of § 356 must be held to be satisfied. *United States v. Davis,* 397 U.S. 301, 307, 90 S.Ct. 1041, 1045, 25 L.Ed.2d 323 (1970).

Finally, the record establishes that the distribution to plaintiff came from his ratable share of VFI's undistributed earnings and profits. VFI's 1972 tax return was not offered into evidence; nevertheless, plaintiff's 1972 tax return as well as a transcript of VFI's balance sheet, prepared by the IRS and introduced into evidence by defendant unchallenged by plaintiff, clearly indicates that the accumulated earnings and profits of VFI at the time of the liquidation-reincorporation were substantially in excess of the net distribution to plaintiff in the amount of $315,475.47.[14] At no time during this litigation has plaintiff challenged defendant's position that sufficient earnings and profits existed in 1972 to absorb the amount of the dividend charged. Because plaintiff's ratable share of the corporation's earnings and profits was 100%, the entire net distribution to plaintiff must therefore be held to have come from his ratable share of VFI's earnings and profits.

■ At first blush, it might seem incongruous that properties classified as "acquire[d]" by VFC under § 354(b)(1)(A) can also be considered "received" by plaintiff under § 356. Nevertheless, close examination of the purpose and language of the reorganization statutes, as applied to the facts of the instant case, renders this conclusion inescapable. The purpose of the

reorganization statutes was stated as follows by our predecessor court:

> Congressional policy is to free from tax consequences those corporate reorganizations involving a continuity of enterprise under modified corporate form and a continuity of interest on the part of the owners before and after, where there is no basic change in relationships and not a sufficient "cashing in" of proprietary interests to justify contemporaneous taxation.

*King Enterprises, Inc. v. United States,* 189 Ct.Cl. 466, 473, 418 F.2d 511 (1969); see also *Groman v. Commissioner,* 302 U.S. 82, 89, 58 S.Ct. 108, 112, 82 L.Ed. 63 (1937).

In determining whether a reorganization has taken place under these statutes, the critical criterion to examine therefore has been whether there was continuity of the enterprise under modified corporate form— i.e., "whether the new corporation carries forward the business enterprises of the old."[15] *Atlas Tool Co.,* 614 F.2d at 867; see also Bittker and Eustice, *supra,* at 14–112– 13. The "substantially all" language of § 354(b)(1)(A) has been utilized as an important means of determining whether the requisite continuity for a reorganization was present. The courts in turn have utilized the "beneficial use" doctrine to determine whether the continuity test has been met in cases where title to the transferor's property did not pass to the transferee corporation. See discussion of history of § 354(b)(1)(A), *supra.*

Section 356, the "boot" provision, was included in the Code for a complementary purpose, i.e., to provide for contemporaneous taxation to the extent that there has

---

14. According to said balance sheet of VFI, the net assets of the business totalled $396,278.17. See Attachment A. Plaintiff has also admitted on his 1972 tax return that his total stock basis in VFI, as sole shareholder of the corporation, was $23,250. The difference between these two figures, i.e., $373,028.17, apparently constitutes VFI's undistributed earnings and profits as of the time of distribution. For reasons not apparent to this court, the supporting statement of IRS Form 5402 (Defendant's Exhibit No. 1) states that the accumulated earnings of VFI amounted to "approximately $368,000."

Whatever the *precise* amount of VFI's earnings and profits, all evidence on the record indicates that it exceeded the $315,475.47 net distribution to plaintiff.

15. In the instant case, unlike in some other cases, the continuity of interest question is easily resolved because plaintiff was unquestionably the sole shareholder of the transferor and transferee corporation. Cf. *Hyman H. Berghash,* 43 T.C. 743 (1965), aff'd, 361 F.2d 257 (2d Cir.1966).

been a "cashing in" of proprietary interests during a reorganization. In other words, "Congress specifically recognized that the throw-off of surplus assets to shareholders in the course of a reorganization can be equivalent to a dividend, and if so, should be taxed as such." *Smothers,* 642 F.2d at 898. The principle underlying § 356 is an off-shoot of the general rule that when property is received from whatever source derived, or is sold or otherwise disposed of, any gain realized must also be recognized, absent an appropriate nonrecognition provision in the Internal Revenue Code. *See King Enterprises,* 189 Ct.Cl. at 472, 418 F.2d 511. If distributions out of earnings and profits during a "paper-shuffling" reincorporation, as here, were not taxed as dividends, "these . . . techniques would eviscerate the dividend provisions of the Code." *Smothers,* 642 F.2d at 897–98.

The fact that plaintiff made his newly-acquired property available for the use of VFC, therefore, does not and should not relieve him of tax liability on such dividends as a result of the receipt of these properties. In this regard, the facts in this case correspond in all material particulars with those of the *Armour* case. In *Armour,* an office building valued at $109,030 was distributed to the transferor corporation's shareholders in the course of a reorganization, but was then leased out to the transferee corporation. This building was held to be part of the operating assets acquired by the transferee corporation, within the "substantially all" equation in § 354(b)(1)(A), under the "beneficial use" doctrine. 43 T.C. at 309. At the same time, it was also included as a part of the "boot," taxable under § 356 to the extent of earnings and profits. *Id.* at 310, 301 (table).

Plaintiff strenuously argues that he was nothing more than a "conduit" for the State Street and Chapel Street properties; that the properties would "properly belong [to VFC if] the formalities in the whole liquidation-reincorporation process

were [not] so sloppy"; and that therefore he should not be taxed on the receipt of these properties as a dividend. He cites *Minnesota Tea Co. v. Helvering,* 302 U.S. 609, 613, 58 S.Ct. 393, 394, 82 L.Ed. 474 (1938), one of the leading cases under the "step transaction" doctrine, for this proposition. Although the step transaction doctrine can be applied to collapse the liquidation of VFI and reincorporation of VFC into one "D" reorganization, plaintiff's invocation of the doctrine is inapposite for the purpose of avoiding "boot" treatment for his receipt of the State Street and Chapel Street properties. A minimum prerequisite to the step transaction doctrine is for the party acting as a "conduit" to relinquish his control over the transferred property to the transferee. *Id.; Sheppard v. United States,* 176 Ct.Cl. 244, 256–59, 361 F.2d 972 (1966); *United States v. General Geophysical Co.,* 296 F.2d 86, 89–90 (5th Cir.1961). No evidence of such a relinquishment of control has been shown here by plaintiff; to the contrary, the evidence on the record indicates that he has retained control of the State Street and Chapel Street properties.

C. *Partial Liquidation*

Plaintiff contends in the alternative that if the transactions of June 1972 are not held to be a complete liquidation, they should be treated as a partial liquidation under the then-prevailing § 346.[16] Plaintiff's claim could only conceivably have come under § 346(a)(2), which provided in pertinent part as follows:

[A] distribution shall be treated as in partial liquidation of a corporation if—

\* \* \* \* \* \*

(2) the distribution is not essentially equivalent to a dividend, is in redemption of a part of the stock of the corporation pursuant to a plan, and occurs within the taxable year in which the plan is adopted or within the succeeding taxable year, . . . .

16. A 1982 amendment has made a slight change in the requirements for a partial liqui-

dation and has moved the applicable definition to § 302(e).

760

Plaintiff asserts that the distribution to him of the State Street and Chapel Street properties was "not essentially equivalent to a dividend" because a "substantial contraction" of his business took place. He supports this argument by claiming that the two properties were substantial assets of the corporation "and were suitable for use in the trade or business of the corporation as well as that of the Plaintiff." (Plaintiff revealed that he owned "office property" contiguous to the State Street and Chapel Street properties, where he was involved in the trade or business of "managing and renting residential property.")

Plaintiff correctly pinpoints the primary factor utilized by the courts and the Internal Revenue Service in determining whether a distribution is "not essentially equivalent to a dividend" for the purposes of § 346, that factor being whether a corporate "contraction" took place. *See Blaschka v. United States,* 184 Ct.Cl. 264, 270, 393 F.2d 983 (1968); *McCarthy v. Conley,* 229 F.Supp. 517, 526 (D.Conn.1964), *aff'd,* 341 F.2d 948, 954 (2d Cir.1965), *cert. denied,* 382 U.S. 838, 86 S.Ct. 85, 15 L.Ed.2d 80 (1965); *Ballenger v. United States,* 301 F.2d 192, 195 (4th Cir.1962); Treas.Reg. § 1.346–1(a); Rev.Rul. 82–187, 1982–2 C.B. 80. However, his contention that the disposition of the State Street and Chapel Street properties was a "contraction" is flatly contradicted by his own testimony.

The most important element of the business contraction test is whether there has been a "substantial reduction in [a corporation's] business activities." *Mains v. United States,* 372 F.Supp. 1093, 1101 (S.D.Ohio 1974); *see also McCarthy,* 341 F.2d at 955;

*Ballenger,* 301 F.2d at 195; Rev.Rul. 78–55, 1978–1 C.B. 88.[17] Here, plaintiff has testified that there was no reduction whatsoever in the activities of VFC's floral business after the transactions of June 1972. Moreover, plaintiff's position at trial sought to establish that the State Street property was suitable only for the floral business and thus directly contradicts his contention that the property could have been used for plaintiff's personal business of renting office and residential property. Plaintiff has therefore shown no grounds, and we find none, upon which the June 1972 transactions could be considered a partial liquidation under § 346.

D. *Estoppel*

In his pretrial brief, plaintiff raised the argument that defendant is estopped from raising the issue of the application of § 368(a)(1)(D), defining reorganizations, because the issue was "first raised" in a memorandum dated "[June] 29, 1983," and is "contrary to the Commissioner's determination in his original statutory notice of deficiency." Plaintiff's post-trial briefs couched essentially the same argument in different terms, claiming that defendant has the burden to prove that any distribution from the liquidation of VFI represented dividend income under § 356(a)(2), because it "lost its presumption of correctness upon failing to include such theory in the Commissioner's statutory notice of deficiency." This argument has absolutely no merit and is entitled to short-shrift.

Even if § 368 and § 356 were not explicitly cited in correspondence with plaintiff

17. Plaintiff contends that the 80% reduction in net worth of the floral business during the transformation to VFC is "more than sufficient" to constitute a contraction, and cites a number of cases and revenue rulings which allegedly so hold. None of these cases or revenue rulings held that a reduction in net worth, standing alone, constitutes a contraction, however. Rather, a reduction in net worth has been considered only as an adjunct to the "substantial reduction in business activities" requirement in order to provide "some protection against the uncertainties inherent in the 'reduction in business' concept." *McCarthy,* 229 F.Supp. at 526, *quoting* A.L.I., Income Tax Problems of Corporations and Shareholders, Report of Working Views of a Study by the A.L.I. Staff and A.B.A. Section of Liaison Committee (1958); *see also Mains,* 372 F.Supp. at 1101. Indeed, the cases plaintiff cites took as given the proposition that "any partial liquidation involves to some degree abandonment of former business." *L.M. Lockhart,* 8 T.C. 436, 440 (1947); *see also Estate of Charles D. Chandler,* 22 T.C. 1158, 1166, *aff'd,* 228 F.2d 909 (6th Cir.1955); *Commissioner v. Sullivan,* 17 T.C. 1420, 1424, *aff'd* 210 F.2d 607 (5th Cir.1954); *Joseph W. Imler,* 11 T.C. 836, 840 (1948).

prior to the issuance of the Statutory Notice of Deficiency, it is indisputable that references to said Code sections were implicit therein. This is manifest even from the revenue agent's report, written one year *prior* to the Statutory Notice of Deficiency, wherein it is stated that "the liquidation of Viereck The Florist Inc., existed in form but not in substance. In such case, the assets [distributed] . . . must be treated as a distribution as defined in Section 301. . . ." The fact that the agent did not mention § 356 explicitly as an intermediate step in reaching his conclusion does not indicate that defendant failed to include its underlying theory in its notice of deficiency. Moreover, plaintiff's estoppel argument is rendered ludicrous by the fact that plaintiff's own representatives expressly referred to the liquidation-reincorporation doctrine and "boot" in subsequent appeals to the Internal Revenue Service. (See Plaintiff's Exhibit No. 9.) There is not one scintilla of evidence that will remotely suggest that plaintiff was surprised by defendant's theory of taxing the distribution to plaintiff. To the contrary, such theory was patently clear, *ab initio.* The sole case cited by plaintiff to justify his contention that the burden of proof shifts is clearly inapplicable to the situation here, because in that case, the defendant sought to prove at trial that its original deficiency letter was incorrect. *Canister Co. v. United States,* 108 Ct.Cl. 558, 566, 70 F.Supp. 904 (1947). Defendant had no such goal in mind in the instant case.

■ Plaintiff also raised a second equally untenable estoppel argument, asserting that the government is estopped from claiming that the State Street and Chapel Street properties were transferred to plaintiff, and not to VFC, in 1972. Because plaintiff has shown no representation concerning the status of the two properties in 1972 upon which he could justifiably rely to his detriment, we find this argument to be groundless. *Cf. Vestal v. Commissioner,* 152 F.2d 132, 136 (D.C.Cir.1945); *Tampa Tribune Building v. Tomlinson,* 57–1 USTC para. 9421 (S.D.Fla.1957).

## CONCLUSION

Plaintiff's threshold objective of retiring from the day-to-day operation of his floral business and passing it in a saleable, stripped-down form to a reputable buyer might have been accomplished by one of two ways. First, plaintiff could have removed the non-operating assets and real estate from VFI's holdings and simply distributed them to himself as a dividend, fully taxable as ordinary income. The second option was the course he chose, admittedly "purely on the advice of legal and accounting professionals," which, in effect, created a reorganization disguised as a liquidation and independent reincorporation. Plaintiff has suggested no plausible purpose to be served by choosing the second option over the first, aside from the obvious motive of tax avoidance. Defendant's characterization of the distribution to plaintiff as a dividend, taxable at ordinary income rates, is therefore entirely consistent with the tax treatment plaintiff would have received if he had accomplished the same purpose in a more straightforward manner.

■ This court recognizes that a taxpayer, by means which the law permits, has the right to decrease the amount of what otherwise would be his taxes. However, where the transaction in issue lies, as here, outside the plain intent of the pertinent statute that permits tax savings, the rule which excludes from consideration the motive of tax avoidance does not apply. *See Gregory v. Helvering,* 293 U.S. at 470, 55 S.Ct. at 268. Any other view would exalt artifice above reality and deprive the statutory provisions of the plain and unmistakable Congressional intent.

Because this is such a case and plaintiff has failed to establish that the transactions in issue constituted a true complete or partial liquidation, the presumptive correctness of the Commissioner's determination must prevail, particularly whereas here the evidence clearly shows, in substance and effect, that a § 368(a)(1)(D) reorganization did in fact occur. Plaintiff's petition is therefore denied.

The Clerk will enter judgment in favor of defendant and dismiss the petition.

IT IS SO ORDERED.